COLBY BROTHERS & COMPANY, Appellee, v. THE UNITED
BREWERIES COMPANY, Appellant.

**Sales:** OVER-PAYMENT: RECOVERY: EVIDENCE. In this action to re-
cover claimed over-payments for beer, on the ground that the
barrels and kegs in which it was shipped contained a less quantity
than represented, the evidence is reviewed and held to present a
question for the jury.

**Instructions.** Where the instructions sufficiently guard the rights
of a party he can not complain that the same were not more
specific, in the absence of a request therefor. ⌄

*Appeal from Webster District Court.*—HON. R. M.
WRIGHT, Judge.

THURSDAY, MAY 12, 1910.

ACTION at law to recover an amount alleged to have
been overpaid to defendant on purchases of beer. Judg-
ment for plaintiff, and defendant appeals. *Affirmed.*

*Henry & Henry,* for appellant.

*Healy & Healy* and *Kelleher & O'Connor,* for ap-
pellee.

WEAVER, J.—From July, 1901, to March, 1907, the
plaintiff partnership was engaged in conducting five or
six beer saloons at Ft. Dodge and vicinity, and during
such period purchased large quantities of that article from
defendant. It was delivered from time to time, as or-
dered, in casks or packages designated as barrels, half
barrels, quarters, and eighths. It is agreed that the term

"barrel" as used in these transactions was understood by the parties to mean thirty-one and one-half gallons, and that the halves, quarters, and eighths were based upon said standard of measurement. The beer was supplied in two brands, one at $4.75, and the other at $5.75 per barrel. The itemized account appears to have been pleaded and put in evidence, but it is not included in the abstracts submitted to this court. It is shown, however, that the sales to plaintiff during the seven years mentioned aggregated one hundred and sixteen carloads, the invoice price of which amounted to about $59,000, and that plaintiff had paid thereon something over $56,000. In this action the plaintiff pleads the matters hereinbefore stated, and further alleges that, while defendant sold and delivered said beer in barrels and other packages with the representation and understanding that each barrel held and contained thirty-one and one-half gallons of beer, and that each fractional-barrel contained its proportional part of a standard barrel, yet in truth and in fact each and all of said packages were short of the standard measurement to the extent of three to four gallons per barrel. It is further alleged that plaintiff had no knowledge of said shortage, but supposed and believed that it was receiving full standard measure until near the termination of its transactions with defendant, and was thus mistakenly induced to accept and pay for beer to an aggregate amount of $56,600 without any deduction or discount for the shortage. According to plaintiff's computation the shortages in the two varieties of beer purchased were as follows: Four hundred and eighty-three and three-fourths barrels at $4.75 per barrel, and three hundred and ninety-five and five-eighths barrels at $5.75 per barrel, making at the price named, with added freight, a total overpayment of $5,267.91. The prayer for recovery is limited to $2,000. The defendant admits the sale of the beer to plaintiff, but denies the alleged shortage in the amount

delivered. It further alleges that plaintiff voluntarily accepted, retained, and used each and every shipment of said beer, and paid therefor from time to time to the amount named, without objection or protest, and is thereby now estopped to maintain this action. Trial was had to a jury, and verdict returned for plaintiff for the sum of $2,108.67. From the judgment rendered thereon defendant appeals.

I. The first and chief insistence on part of appellant is that the evidence offered by plaintiff is insufficient to support a recovery. The testimony on which plaintiff bases its claim is, in substance, as follows: Early in the history of these dealings with defendant the plaintiff or some of the members of the firm discovered that the amount being secured from the sale of beer at retail was less than should have been realized under normal conditions, and were thereby led to mistrust the honesty or efficiency of their agents or barkeepers, but did not think to question or examine the capacity of the packages in which the beer was being delivered by defendant until in April, 1907, when a series of tests was made. Some forty or fifty empty packages were filled with water, using for that purpose a standard gallon or half gallon measure, and found to be uniformly short to the amount of about two gallons to each half barrel, the size of package in which nearly all of the beer was delivered. Tests were also made of the quarters and eighths, finding shortage in each instance, though the shortage in the smaller packages was not quite so marked as in the half barrels. Other witnesses, local saloon keepers, who had handled more or less of the beer purchased by plaintiff, testify to testing the packages at different times during the years 1904, 1905, and 1906, and claim to have found them uniformly short in practically the same proportion found by plaintiffs in their tests of 1907. Bartenders in the service of plaintiff say that no substan-

*1. SALES: over-payment: recovery: evidence.*

tial variation was apparent in the size of the packages of the same nominal capacity in which the beer was received during the years in question, but the same were apparently of uniform measurement.  The process of manufacturing and testing as shown by the defendant also tends to show that all of the packages of the same denomination used in its branches are of substantially uniform capacity.  On the part of defendant witnesses in charge and management of its business testify in effect that a very high degree of care and skill is exercised to insure the full standard capacity of its packages, and to keep the same at all times uniformly correct, and if they are to be credited, it is hardly conceivable that upon a fair test anything more than a merely nominal variation should be found, and quite impossible that a half barrel so made and standardized should exhibit a shortage of one and one-half to two gallons.  That this conflict in the testimony presents a material issue of fact on which plaintiff was entitled to go to the jury we think there can be no reasonable doubt.  There is direct and positive evidence as to a material shortage in the casks actually tested, and we think, if the direct evidence is to be believed, the inference is direct and fair, if not inevitable, that a similar shortage affected all the shipments.  It was the best evidence obtainable under the circumstances.  It is true, as counsel point out, that there are many things in the record which might justify the conclusion that the claim in suit is the product of an afterthought, and without merit, but the credibility of the witnesses was for the jury, and it is not our province to disturb the verdict on such grounds.

II.  Exceptions taken to rulings of the court upon the introduction of testimony are pointed out; but, not being argued by counsel, we shall not take time for their discussion further than to say we find no prejudicial error in them.

It is further argued that cross-examination of one of

the plaintiff firm disclosed the fact that there is an unpaid balance of over $2,000 due from plaintiff on its account with defendant, which claim, counsel say, is the subject of an action now pending in the federal court, and that plaintiff could in no event recover for shortage in so much of the beer as is represented by said unpaid amount. In our judgment the court's charge to the jury sufficiently guards the rights of defendant in this respect. If more specific instruction would have been proper, it was not requested.

2. Instructons.

No objection is made in the court to the instructions or to the measure of the plaintiff's recovery as there laid down, and we must treat them as stating the law of the case. We find no sufficient ground for reversing the judgment below, and the same is *affirmed*.